E. A. BESSER *vs.* M. L. ALLEN.

DECEMBER 30, 1920.

PRESENT: Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

*(1)  Brokers.   Disclosing Interest to Principal.*

A real estate broker with whom real estate has been listed for sale cannot become the purchaser of it or be interested in the purchase of it unless his interest is disclosed to the principal.

*(2)  Brokers.   Disclosing Interest to Principal.   Specific Performance.*

Complainant was acting as a real estate broker and listed property of respondent for sale.   Complainant told respondent he would like to see what he could do for her in the sale of her property and afterwards showed it to prospective purchasers.   Respondent testified that complainant referred to other parties whom he represented as wanting the property.

An agreement to sell the property to complainant which complainant wrote and induced respondent, a woman 74 years old, to sign was not signed by complainant and did not require him or any other person to purchase the property.   Complainant left with respondent the check of a third party.

*Held,* on the evidence respondent never assented to complainant becoming a purchaser of her property.

BILL IN EQUITY for specific performance. Heard on appeal of respondent and sustained and decree of Superior Court reversed.

SWEENEY, J.   This is a bill in equity to compel the specific performance of an agreement to sell a house and lot.   The case was heard in the Superior Court on bill, answer and proof, and after decision for the complainant, a final decree was entered ordering the performance of the agreement, and the respondent duly claimed an appeal therefrom to this court.   The reasons of appeal allege that the decree is against the law and the evidence, and that the court erred in finding that the respondent was not entitled to independent advice.

The complainant testified that he had been in the real estate business for five years;   that he accidentally ran across the respondent, while he was looking for a piece of property for sale, in the vicinity where she lived, as he had a client, who wanted to buy a house, and she said that her

property was for sale, and he replied that he would like to see what he could do for her on it; that she then invited him into her house and gave him full particulars about her property; that three days later, he called again and received permission from her to show the house to a Mr. Chase; that the complainant and Mr. Chase and two others called and examined the house and afterwards, September 27, 1919, while the complainant and respondent were alone in her house, he wrote an agreement which she signed, wherein she acknowledged receipt from him of one hundred dollars as a binder, and the balance was to be paid within sixty days. He testified that he read this agreement to her, and explained to her that she was selling the house, and that she read it herself. He further testified that two or three weeks later he called upon her to get particulars for the deed, and she then told him that she had changed her mind in regard to selling; and November 14, 1919, he notified her by letter that he would be ready to carry out the contract of sale on November 25, 1919, and expected a deed from her at that time. The respondent did not appear at the time appointed, and never tendered a deed, and the complainant then commenced these proceedings. On cross-examination the complainant testified that his first meeting with the respondent was when he called upon her, on the third floor of her house; he saw that she was a woman nearly seventy-four years of age, and he afterwards learned that she was living alone. He further testified that he did not tell her to ask a friend or legal adviser about the property, although he knew at the time, that she had a lawyer on account of an attachment being upon the property.

The complainant also testified that the respondent listed the property with him for sale three or four days before she sold it to him, and he produced his record to prove this fact.

The respondent testified that she is in her seventy-fourth year; lives in the attic of her house; is in poor health, and that her first meeting with the complainant was when he knocked at her door and asked if he might come in and she

said, "Yes," and after some preliminary talk he asked her if the house was for sale, and she said she might sell later, on conditions, but not at present, because there was an attachment on the house. He asked her if she would object to his bringing parties to see the house, and she said it would be foolish to do anything of the kind; but to her surprise a couple of days afterwards he brought three persons to see the house. The third time the complainant came to see her he said that the man had sent him up to buy the house and he talked with her about the price of the house and then he wrote out a paper and said, "Just put your name down there; it don't signify anything." After she signed the paper, he made out a check, laid it on the table, took the paper and went away. The next day the respondent went to see the complainant and offered him the check, and he said he could not take it back as it was not his check. He also said, "You go home, you are no fit woman to transact business."

(1) The complainant, being a real estate broker and having listed the property for sale, became subject to the general rule, to which there are but few exceptions, that a real estate broker with whom real estate has been listed for sale cannot become the purchaser of it, or be interested in the purchase of it, unless his interest is disclosed to the principal. *Rodman* v. *Manning*, 20 L. R. A. N. S. 1158, note; *Schuhmacher* v. *Lebeck*, L. R. A. 1918 F. 788, note; *Christianson* v. *Mille Lacs Land & Loan Co.*, 22 Am. & Eng. An. Cases, 200. In *Smith* v. *Townsend*, 109 Mass. 500, 502, it is stated that "a man cannot, without the consent of his principal, become the purchaser for his own use and benefit, of property which is intrusted to him to sell. The rights of the principal would be in too much danger from the conflict of adverse interests." The same principles of law are also stated in 4 R. C. L. § 25, page 276, as follows: "In the estimation of the law the duties of buyer and seller are so incompatible that a broker cannot discharge them both; and it has therefore placed its ban upon a broker either purchasing from, or selling to, his

principal, unless the latter, with full knowledge of all the facts and circumstances, acquiesces in such a course; and even then the broker's actions throughout must be characterized by the utmost good faith, and in the event of any litigation between him and his employer, the burden is upon him to prove both the permission, and the exemplary manner in which he availed himself of it. In the absence of such express permission, however, the inhibition applies in all cases alike, and not merely to those where the broker has been guilty of fraudulent conduct." See also 9 Corp. Jur. § 39, page 537.

The complainant's testimony proves that he was acting as a real estate broker and listed the property of the respondent for sale; that he told her he would like to see what he could do for her in the matter of the sale of her property; and he afterwards showed it to prospective purchasers. She testified that he told her that his parties had another house in view which would cost $6,200.00, but that her house was larger, and they preferred it. The agreement to sell, which he wrote, and induced her to sign, is not signed by him, and does not require him, or any other person, to purchase her property. The check for one hundred dollars, given as a binder, was not his check.

After a careful consideration of all of the testimony in the case, it is clear that the respondent never consented to the complainant's becoming a purchaser of her property. If the complainant has produced a *bona fide* purchaser, able, ready and willing to purchase the respondent's property, on the terms specified by her, he has a full, complete and adequate remedy at law to recover his commission.

The decree of the Superior Court is reversed, and the cause is remanded to that court, with direction to dismiss the bill of complaint with costs.

*Curtis & Ball, Adolph Gorman,* for complainant.
*Cushing, Carroll & McCartin,* for respondent.